Good morning again. My name is Lisa Cantor and I'm here on behalf of Eileen Zhang. I'd like to reserve five minutes for rebuttal. As long as you know that the time showing is your total time. I do. Thank you. Please proceed. Thank you. Last summer, an en banc panel of this court sort of rocked the ERISA world with the Avedi decision. And those of us who practice in the ERISA arena have been working our way through that decision on a daily basis. But one of the things that I found most profound actually is in the concurring opinion that was offered by Judge Kleinfeld and Judge Rawlinson. And this is what most of us believe. You realize our view did not prevail. I understand. And I'm the appellant here, so there's a theme going on. But the decision says courts have fallen into the unfortunate habit in ERISA cases of focusing entirely on the standard of review. The focus should be on whether the claimant is entitled to the claimed benefits. And I think we talked about that a little bit in our last case. So I'd like to tell you this morning why Eileen Zhang is entitled to the benefits that she seeks. She's disabled. She became disabled in 1999. Liberty agreed that she was disabled and paid her for two years. So far, so good. Now Ms. Zhang thought her disability was due to a mental illness, post-traumatic stress disorder, because that's what her doctors told her. And the plan at issue, like many plans, says that if the disability is due to mental illness, benefits will only be paid for two years. So when Liberty stopped paying, Ms. Zhang did not protest. She also did not get better. Her symptoms did not respond to antidepressants or psychotherapy. And two years later, she finally found out that she did not have post-traumatic stress disorder. She has a physical disease, actually several of them, the most prevalent of which is chronic fatigue syndrome. Now if we are really concerned about whether Ms. Zhang is entitled to benefits, our analysis should stop right here. Because it is not disputed that if she and Liberty had known that she had a physical disease in 2001, her benefits would have continued. And since she can prove she remains disabled and under the care of a physician and meets all the policy requirements, she would still be receiving benefits today. And Liberty said no, and what was their reason? Well, what happened was, when she discovered she had a physical condition, she put a claim in. She put in a new claim and she put in what she thought was an appeal of a claim. Now, if you look at it, they agreed to take her new claim. They said, okay, fine, we'll look at your new claim. But what they refused to do was to figure out whether she had remained disabled since the beginning, through the time of the claim, by a physical condition. Well, they agreed to look at it as a new claim, otherwise if it's an appeal, it's out of time. It is out of time, unless you apply the Notice Prejudice Rule. And how does the Notice Prejudice Rule, the authority for the Notice Prejudice Rule that you rely on, can you highlight some of that? Has it been applied in ERISA cases before? Not to appeals. We're here asking for a case of first impression. Because let's look at how appeals work. And the Notice Prejudice Rule typically is applied in insurance, regular insurance cases. Well, it's applied in these cases, too. The Cisneros case and the Union V. Ward applied it in ERISA disability cases as well. It can apply to your first claim, in other words. If Ms. Zhang had not put her claim in in the beginning, and had never been paid for two years, and in March of 2003 discovered that she had a physical disease or any disease that rendered her disabled before she left work, the Notice Prejudice Rule would have allowed her to submit a claim at that time. What hurt her is that she had previously submitted a claim, thought she only had a mental illness, and therefore didn't appeal, and then tried to submit new evidence of the physical disease. And this has never happened before where someone's tried to relate back their claim based on a new diagnosis. I mean, because that's what happened here. There was a new diagnosis that occurred much later. And how do you deal with this? Do you deal with it as a new claim? Is there a way to relate it back? And that's never happened before in ERISA law. We have all scoured the legal decisions and have not found a legal decision. I can tell you anecdotally that I believe that there are insurance companies who would take that new information and consider it, but that's just anecdotally. And in this case, the company did take it and consider it, but said they'll look at it as a new claim. And then they found that it was a physical new diagnosis and that she's no longer covered under the plan. The problem with what they did on the new claim is that they assumed a date of disability. They did not give her a full and fair review on her date of disability. They assumed that she became disabled the day her doctor decided she had chronic fatigue syndrome. And it even says in their letter, we assume that's the date of disability. A full and fair review requires them to go back and figure out, have you suffered from this from the beginning? And we gave them piles of records showing that. Now, if I could go back to what Abatey tells us. The review of the designation of the date of disability was under abuse of discretion, the old abuse of discretion standard. Abatey also tells us that where the insurance company fails to exercise its discretion, which I would say happened here, because when you assume a date of disability, you're not exercising any discretion, you're just taking a date and assuming it, that the standard converts to Genova. But isn't our question, and tell me if I'm wrong, here, whether or not Genova was reasonable for Liberty Life to assign a March 2003 disability date, which is the date of the new diagnosis, to Chong's 2004 request for benefits. Isn't that what we're to decide, whether what the plan did and what the district court found, was it reasonable? Well, if we hadn't had a change in the standard of review by Abatey, I would agree with you. But the problem is that the district court applied an abuse of discretion standard that no longer exists under Ninth Circuit authority. And that old standard, it was either abuse of discretion or Genova, and there was nothing in between. Under our new standard, which I'm not supposed to say is a sliding scale, but somehow moves, everything that the insurance company does has to be considered to determine how much deference to give to their decision. And one of the prime examples Abatey gives is if an insurance company fails to exercise its discretion, which is what happened here, then it can lose all of its discretion and can be, its decision can be reviewed under a Genova standard of review. I just want to understand, what do you think the company should have done then? Looked at all the medical records and decided whether she did in fact suffer from chronic fatigue syndrome from the beginning. She put in records from, and doctor's opinions that said she did. And so what did they do instead? Nothing. They just said. Adopted an arbitrary date. Well, not arbitrary date, but the later date. They just said, we assume that you've only been disabled from chronic fatigue syndrome since March 2003, because that's when you became diagnosed with chronic fatigue syndrome. You were no longer employed at that point, so denied. And I'm sorry, repeat again. You think they should have adopted what the doctor said? I think they should have done an investigation. I think they should have looked at the records. And if they didn't like, if we didn't provide enough, which we provided a lot, but if they needed to send her for an independent medical review, if they needed to have one of their doctors look at it, whatever. I'm sorry to interrupt, but even though she's no longer covered by the plan? Well, she's alleging that she became disabled at a time when she was covered by the plan. And that's the whole point. Now, the easy way to look at it is, she submits a new claim. They agree to take a new claim. There's nothing that says you can't submit a new claim for the same period of time. And they didn't really, really consider her new claim. They just adopted a date. That's abuse. We have to at least send it back down for a review under the new abatis standard. I think more properly, this court can review it under de novo, because there was a complete failure to exercise discretion. The second way is the no disprejudice rule applies to appeals. And I can discuss that if you'd like, or I can... Isn't that a California doctrine, though? It is a California doctrine, and it's safe from preemption under UNMV ward, and it does apply to initial claims. And you know, it should apply to appeals, because the appeal process in an ERISA claim was set up to allow people to have an opportunity to put more documents into an insurance company once their claim is denied. That's what Congress intended it for. Another opportunity for review. What it's become is essentially a 60 or 180 day statute of limitations, because if you don't get your appeal in, you can't sue. Because it's become a rule that if you don't exhaust your administrative remedies, you can't sue in federal court. UNMV ward, that's Justice Ginsburg's opinion, affirming the Ninth Circuit? Right. A miracle. Yes. But it was a brilliantly written Ninth Circuit decision, that's why. The point is that we have Ninth Circuit case authority that says that there are exceptions to the exhaustion doctrine. I mean, obviously, courts are always able to exercise equity to provide exceptions to doctrines. Counsel, could we go back to the notice of privilege rule? Yes. Isn't this an appeal process? Wasn't this an appeal process, and doesn't the notice of prejudice rule apply only to initial applications? So why should it apply in this case? Oh, you're asking us to expand that as well, for the first time. That's all I'm asking you to expand. The only thing I'm asking you to expand is the notice of prejudice rule. If you want, the narrow way to look at the case is, it was a new claim, they didn't give it full and fair review. Send it back. The ERISA attorney in me says, apply notice of prejudice to appeals because it makes sense. I see what you're saying, okay. Because she shouldn't be in a worse position because she put a claim in before. If she had discovered for the first time that she had a claim in 2003 and had never had a claim before, we wouldn't be here. Is CFS still a diagnosis by exclusion, or have they ever figured out a way to find a virus at the bottom of it? You know, they haven't really found the virus. The Center for Disease Control has a protocol for finding CFS. The interesting thing about it is that you have to exclude a lot of other things to get to the CFS diagnosis, which is why it takes a long time sometimes to get to that diagnosis. You have to have six months of certain symptoms, and you have to rule out a whole bunch of things. But weren't some of those symptoms manifested during the period of the first claim as well? They were all. They were all. We all agree that. We all agree. That's the one thing both of us agree about. And so because she was misdiagnosed, I mean, doesn't she have the obligation to be diagnosed correctly at the time when she's allowed to pursue her claim? I mean, I'm just trying to figure out what this opens the door to, if we allow this, because it seems like she had an opportunity to get all, and I know that these are difficult diseases or illnesses and diagnoses, but she had an opportunity, and then she had a chance to appeal, and she didn't, and then two years later, or three years later, I don't remember exactly, she finds a doctor who says it is chronic fatigue syndrome, and that's what explains all of this. It's not mental, it's physical, so she'll be able to relate back. Well, certainly, I think the record demonstrates that she was seeking treatment the entire time, and there is a requirement under the policy that you have to be under the constant care of a physician, and if she didn't do that, that would be a basis for them to deny the claim if she didn't comply with that requirement. But the problem with requiring her to appeal her mental and nervous claim is that she had no basis to appeal it. So let's say, just because she, for whatever reason, she puts an appeal in, and she says, well, I know I only have a mental illness, but I'm going to put my appeal in to preserve my rights. No, I understand that. I'm just saying, it seems like, so if she makes a mistake, or she fails to adequately present the correct diagnosis, it just continues on? Well, it doesn't continue on, because the Supreme Court and this Court has already given us the limitation, and that's notice prejudice. Which has never been applied in this context ever before. Only to initial claims. Only initial claims. Initial disability claims, initial life claims, and other kinds of insurance claims. But remember, this is the only context, too, where we have taken a statute that was supposed to allow an opportunity for further review, and slammed the door shut with it. But at some point, insurers and employers have to know the extent of their exposure. I mean, it can't just keep, you know, piling up. It's really a difficult situation. Well, the statute of limitation gives you the end of the exposure, and if the insurance company is prejudiced, then they don't have to look at the claim. That's easier, but then you have a fight about what the prejudice and what the extent of the prejudice is. But you have the same fight if there was never an initial claim. If this had come in for the first time in 2003, there's no change in exposure, and there's no change in what the fight is about, whether they're prejudiced or not. But that's a more finite set of cases, though, where you have the initial claim. I have no way of knowing that. Well... I see I have like three and a half minutes left, so maybe I'll step away. Thank you. Good morning, Your Honors. Almost afternoon. My name is Susan Handelman. I'm appearing on behalf of the Liberties Life Insurance Company. I'm going to start with pretty much where my opponent started this morning, and that is that she started with a hypothetical that doesn't exist in this case. The hypothetical was that if she had never submitted a claim before, then we would be under different rules, and maybe we could have a notice prejudice situation apply. But the fact is, Your Honors, that in this case, there was a claim, as is pointed out also by my opponent this morning. Ms. Chang came to her employer and to the disability insurance plan, the insurer that insured the plan, and said, in 1999, I am disabled. And that's an important point. I am disabled. It doesn't ask you whether you're physically or mentally disabled. The point of it is, this is a disability income plan, and if you show that you're disabled and provide proof of it, then you get income. In 1999, she showed that she was disabled, and for two years got income. Now, there's a limitation. The limitation is that if it's a mental illness or a mental problem that is keeping you from working, and that's the important point here, keeping you from working. What's keeping you from working? Every bit of information that was received was that she couldn't do the job because there was a problem with her supervisor. There was stress and anxiety. Now, also, as is agreed, from day one of this claim, there were physical manifestations of this problem. She says from day one that she had anxiety attacks. She had chest pains. She had fatigue. There were all sorts of physical manifestations, so that when the two-year mental illness benefit, which is a limitation on the disability benefit itself, is coming due in February of 2001, Liberty Life didn't just withdraw benefits, but they write her a letter and say, Look, if there's any reason why this shouldn't come to a close, let us know. Now, again, reminding you that there were some physical manifestations along the way, and Lord knows, certainly on my able opposing counsel and my firm, we deal with these ERISA cases constantly, and if there's a hint of a physical problem, the argument is available, as the court found in this case, the district court found. She could have, before the time period for appeal ran out, said, Look, wait a minute here. If you're talking about solely mental, well, how about my chest pains and fatigue and those sorts of things, and it just didn't happen. Now, as we were moving through the appellant's argument this morning, we talked about, Well, if the rule changes and we now allow people to reopen claims as this claimant wants to do, two years after the claim closed, where does it end? Where are we going with this? And I think we have to go back and look at the purpose of ERISA, at least some of the purposes why the statutory scheme was put into effect. Among the reasons for ERISA, uniform guidelines and criteria, reduced litigation, consistent treatment of claims, and you're right, Your Honors, as we were discussing a bit earlier with opposing counsel, there has to be some finality to claims, too, because it does provide certainty. It does provide some, it provides a cost determinant in the administration of these plans, which ERISA intends to encourage. Employers ought to be encouraged to have these plans, and these kinds of tradeoffs are important in it. Now, I want to address a few of the other points that were made. Full and fair review. Your Honors, when in 2004 the claim came in that said, we want to, we have a further and or new claim, the first thing to remember is that this person did get benefits, and the indications were that the, that the symptoms that were complained about started back in 1999 with the original claim. So how rational was Liberty to look at it as a further claim? And what is one of the first steps in reviewing that process? Liberty reviewed it and informed the insured, as many courts have upheld, the exhaustion of administrative remedies. Then when the claimant requested, and the letters are in the record, they speak for themselves, virtually demanded review of this as a new claim, Liberty reviewed it as a new claim, and the first step in that process was to see whether the employee was eligible. Was she in the eligible class? The eligible class is employees. Well, this employee's benefits and her work terminated in April of 2001. Her disability, her prior disability claim continued until May of 2001. So there was any time after May of 2001, there was no time at which she would have been eligible for benefits. And so whether the date is pegged by a review of records at 2003, March, which is what the plaintiffs suggested in their own letter, or whether it's pegged at some other date after the prior claim closed, after the disability benefits were no longer being paid, which would necessarily begin a new disability period, at no time was she an employee. So the decision starting there was appropriate and rational and reasonable and correct. Would it have been reasonable for Liberty Life to have signed a March 1999 disability date to the March 2004 claim? No, it wouldn't have been, and let me explain why. And it goes back to what is the function of this plan? The plan provides income while you are unable to work. And she said, I am unable to work. It doesn't say you can't have two different claims for the same period, because it doesn't matter, as long as you're disabled from working and you're getting the benefits, it doesn't matter whether you're disabled because of mental distress, if your records show that, or if your records during the middle of the payment of a claim that started out as mental, some sort of a stress claim, you break your back and are injured in that way, and suddenly the reports come in that it's physical, as long as you are receiving benefits during that period of time, your claim is being paid, you are receiving disability benefits. When that claim is over, there's no second claim that can be superimposed on top of it, because there's only one disability benefit that can be received, one income benefit, and it was paid. So the second claim, if there were to be construed as a new claim, would have to begin at some period after she stopped receiving disability income benefits under the first claim. And any date you pick after the termination of the first claim, she wasn't an employee anymore. Well, why couldn't you simply construe it as beginning at the first date, but she doesn't get paid double for that time, that would seem to eliminate you. There is nothing in the plan and no case that suggests that this is possible. It is a good claim. Let's play law school for a second. Would this be any different, for example, if she had been misdiagnosed somehow, this is a brain tumor instead of CSF, and she comes to you exactly as she came to you under these circumstances, but with an x-ray that showed the brain tumor, it starts from day one, and some doctor had not seen it or something like that. So now she presents saying, hey, I've had a brain tumor all along, here's concrete physical proof. You'd still be able to say, well, the date of the brain tumor is X, even though the x-ray showed that it was earlier and denied it. Respectfully, Your Honor, not so. Respectfully, Your Honor, the question is, was she disabled from work and did she get disability benefits? Yes, she did, from 1999 March until 2001 March. And the disability isn't linked to is it mental or is it physical. If she's disabled, for some reason, the question is, was she able to work during that period? If she wasn't able to work during that period, then she presented a claim and was paid her claim. If it turns out that there was some reason that she wasn't able to work for some future time after that, for which we now learn that benefits might be due, then the analysis starts at that point. Was the employee at the point where the benefits cut off the last time? Is there a, even if you construe the date of injury as the date that the prior benefit let off, then in this case she wouldn't be covered. But in this case also, the only date that was suggested, the only thing new, there wasn't a diagnosis of a brain tumor. There was here simply a new diagnosis, same symptoms, same symptomology all the way through, but now we're putting a different label on it. And here, putting a different label on it does not give rise to a new claim. It might give rise to, they asked us to consider it as a new claim, and giving the best possible face to this sort of absurd situation, the only date that could be given to the claim, according to their letter, they said we had a choice of two dates. They said most favorably the liberty, it might be the date of diagnosis, or most favorably to them it would be even a later date. So taking the earliest of the two dates, which was March of 2003, she wasn't employed. So the answer to that is no. Let me make sure I just, I heard correctly what you just said. They gave you a choice of two dates. Yes. If your honors would like, I have it here. In her letter, this is a letter from the Cantor & Cantor law firm. It is ER 753. In accordance with Liberty's own policy provision, Ms. Chang was required to provide proof of her claim as soon as reasonably possible, but no later than 15 months from the time that proof was otherwise required. Even utilizing the date most favorably to Liberty under this analysis, Ms. Chang's claim submission would not have been required until approximately June 2004, 15 months after she received her diagnosis. So they ran the first one from the date of diagnosis. Alternatively, if the time for submission is calculated from the date Ms. Chang first understood that her claim remained viable, which is presumably a year later when Ms. Chang went to a lawyer and the lawyer said, gee, we'd better get after Liberty and see if we can get this policy re-going again or re-established, then her claim would not have been required until sometime in 2005. Whichever analysis is utilized, it is clear that the submission is timely. So that is a rational choice of date based on their own suggestions. A BATI was argued as being ‑‑ A BATI. I'm sorry, a BATI. Or a BOTI. We're all saying a BOTI. Can you speak to the effect of that on this case? Your Honors, a BOTI essentially adopted a lot of the reasoning that the court had used, the Supreme Court had used in the Firestone case. And we don't think this case requires remand to the district court for re-decision under a BOTI because this is sort of a different situation with the application of the Abusive Discretion Test. The court in a full hearing and a full decision, which is in the record, found that the Abusive Discretion applied and said that and understood, clearly understood in his decision on that subject, which is in the record at page 43 at SEC. In his decision, he says that under Firestone, if there's a conflict in the determination of whether the fiduciary abused, the court has to take away whether there's a conflict in applying the Abusive Discretion standard but found that the ‑‑ correctly found that the Abusive Discretion standard applied here. Well, this case is different than the run-of-the-mill Abusive Discretion case because, as we heard in the prior case, there can be concerns about the grant of discretion in the first place. And secondly, usually the discretion is on the administrator calling a choice, calling ‑‑ the administrator could have ruled that the person was disabled or could rule that the person was not disabled. And I guess under the Abusive Discretion standard, typically you would say, well, I wonder, given a choice, I guess it was rational. In this case, if you view this as application of the exhaustion principles, application of a new claim, questioning of the viability of a new claim submitted in 2003 after she was no longer covered as an employee, there was actually no discretion to rule the other way on the part of the administrator. So that here, there really isn't anything to be done if the case is to be remanded under a body. There isn't any discretion that would have been appropriately ‑‑ that would have taken the case the other direction. And further, as we pointed out in briefing, the ‑‑ really, no matter what standard is applied here, the district court judge made three separate rulings, one on summary judgment, a whole separate order and consideration of all the factors on standard of review, including the sort of sliding scale, which my opponent doesn't want to use that term, but sliding scale analysis under Firestone, and applied the Abusive Discretion standard, clearly understood its import under Firestone, and a third very well‑reasoned order following a court trial in which he ruled that liberty still had been correct. So as far as remand, we don't believe that it is appropriate. One just final note, I think the court is probably tired of hearing about the Notice Prejudice Rule, but the Notice Prejudice Rule, there's a very important reason, and I want to emphasize this, is why the Notice Prejudice Rule should not apply to administrative appeals. It's very ‑‑ the Notice Prejudice Rule from Cisneros, which I know is a very learned decision from Your Honor Judge Trott, and the Supreme Court's wonderful application or acceptance of Ninth Circuit reasoning in the Ward case, was applied to the initial claim for a good reason, and that is that the requirement to submit a claim within so many days, so many months, so many weeks, is in the insurance, when it's an insured plan, it's in the insurance policy. And so borrowing from California insurance law is this theory of the Notice Prejudice Rule. You can't call someone out unless you're so far beyond the notice that the insurer has been prejudiced. This is an import from insurance law. Importantly, the appeal process has nothing to do with California insurance law. Nothing. The administrative appeal process is an ERISA governed provision. It's provided for in the CFR by ERISA statutes, and it's in the plan, and it's in the summary plan description, and there isn't a word of it, this appeal process, in the liberty, the insuring document that insures the plan. So it's unconnected with insurance. And so applying the Notice Prejudice Rule outside of the overlap of insurance here with ERISA, and in a strictly ERISA appeals process, is contrary, frankly, to ERISA. It isn't called for, and ERISA preempts the basic insurance law in that case. Your Honors, we respectfully request that you affirm the district court's judgment in this case. Thank you, counsel. Rebuttal. Thank you. There is nothing in this policy, or any ERISA case, that says you can't have a new claim that just has the same start date as a different claim. You can't get paid. Same start date as what? Same start date, disability start date, as another claim. You can't get paid twice, but you certainly can have a new claim based on a prior period. On page 28 and 29 of our brief, we cite a number of cases where people have put claims in after they've left work. Why shouldn't you be bound by the claim state that you articulated in your correspondence? That letter that was referred to had to do with why we were able to put in a new claim, trying to convince them to submit it as a new claim. But you said that the claim state was either of two things. One, that's most favorable to liberty, and an even later date that you thought really applied. You didn't advocate that it relate back to the original claim state in that letter. No, that letter had to do with whether the claim was timely, not when the disability began. That was just arguing that the claim was timely because the notice that we had, that we had a claim, was either in March of 2003 or later in 2004. Even if that's all that it related to, why shouldn't we be bound by what you offered? Well, I don't know how it changes the result if we're bound by that. There was no denial of this claim on the grounds that it was too late as a new claim. In other words, they didn't say we're prejudiced because you've submitted this claim too late. That letter had to do with why we weren't too late to submit the claim, not whether it was a new claim or a reopening of an old claim. Consistently, if you look back at the record, we have always consistently said that the symptoms remained the same from the beginning of 99. Well, in your letter you said your June 7, 2004 letter referring to liberty ignores our indication that our May 3, 2004 letter was intended to provide further and or a new claim for disability benefits. You didn't say further claims under the old claim, further benefits under the old claim. You said a new claim for disability benefits. Right, and what I'm saying is that you can have a new claim with the same disability date. The date of your disability has nothing to do with whether your claim is new or old or whether your claim is a reopen or a reconsideration or a new claim. How you consider it has to do with their internal processing. They're saying to you today, we can't call it a new claim when it has the same date of disability, and I'm saying, of course you can. There's nothing in the policy that says you can't, and there's nothing in the case law that says you can't. Your colleague on the other side of the aisle says that the notice prejudice business imports from California law and you run headlong into preemption if you try to apply it in this context. Your answer to that is correct. Yeah, first time I've heard that argument here at Oral Argument. I would refer the court to the Uniview Ward decision, which says that the same sort of argument was made there. We don't put it in the policy. We put it in the plan, and so we can avoid the notice prejudice rule and the Supreme Court said, no, no, no, no, no. You can't just, what she's saying is that the appeal part is in the plan, not the policy, so it's not insurance law, and you can't play fast or moose that way. If you could, you could do the same thing with initial claims. You could put it in the plan and not in the policy and avoid the notice prejudice rule. All right, counsel, you've exceeded your time. Thank you. Thank you to both counsel for a well-argued case. The case is submitted for decision by the court. That concludes our calendar for today, and we are in recess.
judges: Trott, Rawlinson, Murguia